**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

OPEN ACCESS FOR ALL, INC.,
and ANDRES GOMEZ,

      Plaintiffs,

vs.

SAFEGUARD OPERATIONS LLC
d/b/a Safeguard Self Storage,

      Defendant.

---

## COMPLAINT

---

COMES NOW Plaintiff Open Access For All, Inc. and Plaintiff Andres Gomez, by and through their undersigned counsel hereby file this Complaint and sue Defendant Safeguard Operations LLC ("Defendant") for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and pursuant to the common law tort of trespass and alleges as follows:

## INTRODUCTORY STATEMENT

1.     Plaintiff Open Access for All, Inc. and Plaintiff Andres Gomez (referenced collectively as "Plaintiffs") bring this action in Federal Court to stop the exclusion of blind, vision impaired, and low vision patrons of Defendant's business.

2.     Businesses can make choices (unlike visually impaired individuals) and

1

can either make their business inclusive, or they can make them effective **Zones of Discrimination**.

3.       When businesses offer services that are inaccessible and then do not notice the public that those services are inaccessible, those business owners are not only marginalizing the visually impaired community but are actively excluding those members of the public who are visually impaired from their business.

4.       This case arises out of the fact that Defendant has operated its business in a manner and way that effectively excludes individuals who are visually impaired from access to Defendant's business.

5.       Defendant Owns and operates places of public accommodation which are self-storage facilities under the brand name "Safeguard Self Storage."

6.       This complaint seeks declaratory and injunctive relief to have Defendant update its policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendant's business so that individuals who are blind or visually impaired can communicate with Defendant effectively and timely such that their access to Defendant's self-storage facilities are not impeded; as such impediment has rendered Defendant's physical self-storage facility locations not fully accessible to the visually impaired.

7.       This complaint also seeks compensatory damages as compensation for having been subjected to unlawful discrimination by Defendant as a result thereof.

## JURISDICTION & VENUE

8.       This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. §

2

1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's business.

9.     This is also an action with supplemental jurisdiction over related state law claim pursuant to 28 U.S.C. §1367.

10.     State law provides for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (his personal computer). Remedies provided under common law for trespass are not exclusive, and may be sought connection with suits brought under the ADA.

11.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting business within the jurisdiction of this court by virtue of the fact its website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District. Further, several of the Defendant's self-storage facilities are located in the district.  In addition, the Defendant is authorized to conduct business within the state of Florida as a foreign limited liability company.

12.     Plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

### Open Access For All, Inc.

13.     Plaintiff Open Access For All, Inc. (also referenced as "Plaintiff Open Access", "Open Access," or jointly with Plaintiff Andres Gomez as "Plaintiffs") is a membership civil rights non-profit corporation formed under the laws of the State of Florida which maintains its principal office within this district.

14.     Open Access members include individuals who are substantially limited in

3

the major life activities of seeing/sight.

15.     Open Access advocates, *inter alia*, for the full and equal participation of its members in all aspects of society. Open Access is devoted to the goal of full inclusion, equality, and civil rights for its members, who are blind or visually impaired and whose lives are directly affected by loss of sight. Open Access' work is based on a close association with its members.

16.     Open Access members include individuals who are substantially limited in the major life activity of sight. Open Access members utilize screen reader software, which when utilized allows individuals who are visually impaired to communicate with internet websites.

17.     One or more of Open Access members have tried and have been unable to access and comprehend the Defendant's Website and have standing to bring suit in their own right to sue Defendant. One or more of Open Access members have been discriminated against as they have been deterred from (and have been denied the opportunity to) participate and benefit from the goods, services, privileges, advantages, facilities and accommodations at Defendant's property equal to that afforded to other individuals. One or more of Open Access members have a well-grounded belief that any attempt to visit Defendant's property free of discrimination would be a futile gesture.

18.     Open Access members have a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations contained within this Complaint. Open Access members have reasonable grounds to believe that they will continue to be subjected to discrimination in violation of the ADA by the

Defendant.

19.     Accordingly, the interests that Plaintiff Open Access seeks to protect through this litigation are germane to its mission and purpose.

**Andres Gomez**

20.     Plaintiff Andres Gomez (also referenced as "Plaintiff Gomez" or jointly with Plaintiff Open Access as "Plaintiffs") is a resident of the State of Florida, and he resides within this judicial district.

21.     Plaintiff Gomez is substantially limited in the major life activity of sight/seeing and is an Open Access member.

22.     Plaintiff Gomez is an otherwise qualified or qualified individual with a disability in that he is qualified to access Defendant's Website.

**Safeguard Operations LLC**

23.     Defendant Safeguard Operations LLC is the owner and operator of a chain of self-storage facilities under the brand name "Safeguard Self Storage." The Defendant owns and/or operates over one seventy Safeguard Self Storage facilities in the United States.

24.     Safeguard Self Storage has been providing storage solutions since 1989, and has grown into one of the premiere self-storage companies in the United States with more than 70 locations. Fourteen Safeguard Self Storage facilities are located in Florida. The Defendant also maintains retail stores that sell packing and storage supplies (such as boxes, moving kits, and locks), at their self-storage facilities.

25.     On information and belief, Defendant Safeguard Operations LLC is a subsidiary of Safeguard Storage Properties, LLC which owns and operates self-storage facilities in the United States.

## FACTS

26.     Each of Defendant's Safeguard Self Storage facilities is open to the public and is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation as it is "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," 42 U.S.C. §12181(7)(E); §12182, and 28 C.F.R. Part 36. Defendant's Safeguard Self Storage facilities are also referenced throughout as "Place(s) of Public Accommodation," ""self-storage facility(ies)," or "Safeguard Self Storage facilities."

27.     Safeguard Self Storage facilities offer for rental to the public of a variety of self-storage units (ranging in sizes from small 25 square foot to large 350 square foot spaces) and sale to the public of packing and storage supplies (such as boxes, moving kits, tape, bubble wrap, packing peanuts, and locks), which are all heretofore referenced as "Safeguard Self Storage merchandise" and/or "storage units."

28.     Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or **other sales or rental establishment**," 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

29.     Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates the Safeguard Self Storage facilities as defined under 42 U.S.C. § 12181(7)(E).

30.     Defendant controls, maintains, and/or operates a collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at a website called www.safeguardit.com ("Website").

31.     Defendant's Website is offered by Defendant as an electronic on-line store which permits the public to obtain information on Safeguard Self Storage rental units and merchandise, information on self-storage policies, and other information Defendant is interested in communicating to its customers, as well as granting customers the ability to reserve, rent and purchase Safeguard Self Storage units online. From the Website, the public can receive special discounts, and locate a self-storage facility nearest them.

32.     For all of the reasons as delineated herein, clearly, the Website is an integral part of the products and services offered by Defendant. By this nexus, the Website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. § 12181(7)(E) of the ADA[1].

33.     Defendant's Website is also a public store that is on-line, where the public can view, reserve and rent Safeguard Self Storage units online. Therefore, the Website is itself a sales and a rental establishment which is a Place of Public Accommodation pursuant to 42 U.S.C. §12181(7)(E). As such, the Website must comply with all requirements of the ADA.

---

[1] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

34.     Since, at all times material hereto, Defendant has owned and operated the Website and the Website is open through the internet to the public as part of its dealership and service/repair facilities, Defendant (as the owner/operator of the Website) is defined as a "Public Accommodation" within meaning of Title III, 42 U.S.C. § 12181(7)(E) and 28 C.F.R. §36.104(2).  As such, Defendant has subjected itself and the Website it has created and maintains to the ADA.

35.     Plaintiff Gomez is an individual who is interested in renting a self-storage unit, such as Safeguard Self Storage units which are offered through the Defendant's Safeguard Self Storage physical locations, particularly as offered in the Safeguard Self Storage located at 2650 Southwest 28th Lane, Coconut Grove, Florida 33133 which is close to his home.

36.     In October 2017, Plaintiff Gomez called Defendant to inquire about renting a Safeguard Self Storage unit and purchasing packing supplies. However, Defendant's representative failed to fully assist Plaintiff Gomez and referred him to its Website.

37.     Following communications with Defendant's representative, Plaintiff Gomez attempted to utilize Defendant's Website as instructed by Defendant's representative.

38.     Due to his disability, the Plaintiff Gomez requires screen reader software to be able to participate in and receive the benefit of the Defendant's online (Website) content.

39.     When Plaintiff Gomez tried to interact and engage the Defendant through its Website, he encountered a Website that was not designed with accessibility (for the disabled) in mind.

40.     Defendant's Website is not designed with consideration for Universal design. Universal design is necessary so visually impaired individuals who use screen reader software can access the Website[2].

41.     Furthermore, Defendant's Website does not have the sign of website accessibility[3].

42.     However, Defendant's Website lacks accommodations necessary to allow visually impaired individuals who use screen reader software access to the Website, prompting information to locate and accurately fill-out online forms and to browse through Safeguard Self Storage rental units and merchandise for the purposes of renting a Safeguard Self Storage unit and purchasing packing supplies, as this information (and service) is available to the public through Defendant's Website.

43.     Defendant's Website was inaccessible so Plaintiff Gomez (and Open Access members) could not (among other things):

    a.  Find out what information was needed to rent a Safeguard Self Storage unit,
    b.  Reserve and rent Safeguard Self Storage units online, and
    c.  Learn about the Safeguard Self Storage packing supplies and merchandise inventory for the purpose of then going to a local Safeguard Self Storage store to purchase Safeguard Self Storage merchandise.

---

[2]  "Universal design is the design of products and environments to be usable by all people, to the greatest extent possible, without the need for adaption or specialized design."  Kalbag, Laura (2017), by *Accessibility for Everyone*, (p. 5)

[3] 

44.     As such, Plaintiff Gomez and Open Access members have been denied access to Defendant's Safeguard Self Storage facilities since they are wholly unable obtain meaningful information regarding Safeguard Self Storage rental units and packing and storage merchandise (including reserving, renting and purchasing a self-storage unit online).

45.     Like any other citizen, Plaintiff Gomez has been frustrated in his inability to understand the basic information about Defendant's goods and services. Due to this frustration, Plaintiff Gomez has given up hope of going to Defendant's Safeguard Self Storage facilities.

46.   The fact that Plaintiff Gomez and Open Access members could not access Defendant's Website left them excluded from accessing the Defendant's goods and services offered and further left Plaintiff Gomez and Open Access members with the feeling of segregation, rejection, isolation, and unable to participate in their own business affairs (such as storing their belongings in a safe and temperature controlled storage unit) in a manner equal to that afforded to others who are not similarly disabled.

47.     This inability to participate in Defendant's products and services has resulted in a *virtual barrier* which has created an *effective barrier* to access to Defendant's Safeguard Self Storage facilities and to the products and services offered by Defendant. Plaintiff Gomez and Open Access members' inability to fully use Defendant's Website has hindered, impeded and inhibited their future access to Defendant's physical self-storage facilities.

48.     Plaintiff Gomez and Open Access members inability to communicate with/comprehend Defendant's Website has impeded their access to Defendant's the

products and services which Defendant offers to the public and has impeded Plaintiff Gomez and Open Access members' ability to patronize Defendant's physical Safeguard Self Storage facility locations. Plaintiff Gomez and certain Open Access members have suffered as a result and suffered particularized harm and an injury in fact.

49.     Plaintiff Gomez and Open Access members continue to desire to patronize Defendant, but are unable to do so, as they are unable to obtain the information they require through the Website Defendant offers to the public.

50.     Since Plaintiff Gomez and Open Access members are disabled, they require as complete information as possible before arranging transportation and making a journey such as to Defendant's physical Safeguard Self Storage locations in order to rent a Safeguard Self Storage unit and/or purchase packing supplies/merchandise. As such, Plaintiff Gomez and Open Access members (and others with vision impairments) will suffer continuous and ongoing harm from Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

51.     On information and belief, Defendant has not initiated an ADA policy for effective communication to insure full and equal use of their business by individuals with disabilities.

52.     On information and belief, Defendant has not designated an employee as an Accessibility Coordinator to insure full and equal use of its Website by individuals with disabilities.

53.     On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

54.     On information and belief, Defendant has not created a Website page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have its Website accessible to the visually impaired community.

55.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its Website.

56.     On information and belief, Defendant has not offered any form of electronic documents in an accessible format for blind or visually impaired individuals.

57.     Thus, Defendant has not provided full and equal enjoyment of the goods and services provided at its Safeguard Self Storage facilities.

58.     All Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

59.     On information and belief, Defendant is aware of the common access barriers and barriers to effective communication within its Website which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented by Defendant to the public.

60.     Defendant and alike self-storage facilities are fully aware of need to provide full access to all visitors to its Website.[4]

---

[4] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g.
(https://www.digitalcommerce360.com/2016/04/01/web-accessibility-what-e-retailers-need-know/),
 (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance )

61.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and result in punishment and isolation of blind and low vision individuals from the rest of society.

62.     According to the National Federation for the Blind[5], there are over seven million Americans with visual disabilities (which makes up 2.3% of the population), and there are 486,400 individuals with visual disabilities living within the state of Florida[6].

63.     Plaintiff Gomez and Open Access members have no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices. No price can be put on Plaintiff Gomez and Open Access members' inability to investigate, compare and obtain products and services themselves.

64.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of the rights of Plaintiff Gomez and Open Access members is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

65.     Plaintiff Gomez and Plaintiff Open Access For All, Inc. have retained the civil rights law office of Scott R Dinin, P.A. and have agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

**Trespass Violations**

66.     Plaintiff Gomez and Open Access members utilize their personal computers to access websites such as the Defendant's www.safeguardit.com website. As

---

[5] See  https://nfb.org/blindness-statistics
[6] 486,400 is the number of non-institutionalized (male and female, all ages and ethnicities) reported to have a visual disability in 2015; see https://nfb.org/blindness-statistics

do members of the public, they use their personal computers as a method of conveyance of their personal information.

67.     As do members of the public, Plaintiff Gomez and Open Access members store their personal information and retains browsing history on their personal computer.

68.     Throughout the Website, Defendant has placed forms of software to collect non-public information on the website's user's preferences and internet browsing habits.

69.     The Defendant informs the Website user that the user's personal information and browsing history is collected is used for targeted marketing and advertising. Further, Defendant discloses that any individual who accesses its website and commences to shop on that website is subject to having his/her personal information conveyed to third parties. According to the Defendant's Website, those third parties include (but may not be limited to): (i) the Defendant's related affiliated companies (without so naming those other companies), (ii) retail partners (without so naming the retail partners), (iii) advertisers (without so naming the advertisers), (iv) to law enforcement officials (if so required to be transmitted by said law enforcement), (v) to other third parties "whenever [the Defendant] believe[s] in good faith", and to (vi) Google Universal Analytics and Google Analytics.

70.     Plaintiff Gomez and Open Access members are unable to comprehend Defendant's Website; therefore, have no choice (and therefore no knowledge) of the Defendant's installation of software and collection of the website user's browsing history and analytics placed on their computers.

71.     Based upon the review of Defendant's Website, it is clear that, when a user accesses Defendant's Website, the Defendant installs software onto the user's computer. It is clear that the Defendant has used browser cookies to identify websites Plaintiff Gomez and Open Access members have previously visited by accessing their (respective) web browser history.

72.     As such, through its Website, Defendant has committed a trespass against Plaintiff Gomez and Open Access members since the Website places software on their respective personal computers without their consent.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

73.     Plaintiff Andres Gomez and Plaintiff Open Access For All, Inc. re-allege and incorporate by reference the allegations set forth herein above.

## Requirement for Effective Communication

74.     It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

75.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems." 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

76.     Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be

effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

77.      Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

78.      Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Defendant's Business is A Place of Public Accommodation**

79.      By virtue of the fact that Defendant's Safeguard Self Storage facilities are open to the public, each is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(E), they are subject to the requirements of Title III of the ADA, and the ADA prohibits any and all barriers which would limit access by the visually impaired to such places of public accommodation.

80.      The virtual barrier to access is just as real as a physical barrier to access, for without information as to the products and services offered by Defendant's facilities and ability to investigate and choose a self-storage facility to patronize, the visually impaired have no access to rent one of Defendant's self-storage units and to purchase packing supplies which Defendant's self-storage facilities offer to the public.

**The Website As A Place of Public Accommodation**

81.     Consistent with the text and legislative history of the ADA, the Department of Justice has long affirmed the application of Title III of the ADA to websites of public accommodations[7]; see Statement of Interest filed by the Department in *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

82.     District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. See, *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #32] Order Denying Defendant's Motion for Summary Judgment, quoting from *Plaintiff v. Bang & Olufsen Am., Inc.,* No. 16-23801 at 9 (citing *Rendon v. Vallycrest Prods., Inc.* 249 F.3d 1279 (11th Cir. 2002) for the proposition that if a plaintiff establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to dismiss).

83.     The Courts have held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

---

[7] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

84.     The website is a *Place of Public Accommodation* pursuant to 42 U.S.C. § 12181(7)(E) as an integral part of Defendant's self-storage facilities by providing the public information on the physical location of Defendant's self-storage facilities and offers the public the ability to be become educated as to the inventory of available self-storage units for rental and packing supplies for purchase.

85.     In addition, Defendant's representatives within its self-storage facility locations have referred customers to Defendant's Website for additional information, as the Website provides information regarding its inventory of available self-storage units and packing merchandise, such that the Website is an integral part of the public's needs with respect to Defendant's business.

86.     It is clear that the ADA applies to the Defendant's Website, as the Website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

87.     The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Nat'l Ass'n of the Deaf v.*

18

*Netflix, Inc.,* 869 F. Supp. 2d at 200 (D. Mass. 2012)[8] *Netflix,* (citing H.R. Rep. 101-485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc*., 97 F. Supp. 3d, 574 (same) (D. Vt. 2015)[9] (emphasis added). For example, Congress identified "information exchange" (the principal function of a website) as an important area of concern where expanding technology would be subject to the ADA. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

88.    Recent case law supports that the intangible barriers presented within Defendant's Website is violative of the ADA.  In rendering his decision that Winn Dixie Stores, Inc.'s website contained barriers to access which are prohibited by the ADA[10], Judge Scola drew upon the decision in *Rendon v. Valleycrest Prods., Inc.* 294 F.3d 1279, 1284 n.8 (11th Cir. 2002), where the Eleventh Circuit noted that the plain language of Title III of the ADA covers both tangible, physical barriers that prevent a disabled person from accessing a public accommodation, as well as "**intangible barriers**, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges . . . ." 249 F.3d at 1283 **(emphasis added)**.

89.    At the present time and since the Website's inception, Defendant has provided inadequate service, and ineffective communications and services. Plaintiffs' injuries are real, have occurred, and are continuing. Plaintiff Gomez and Open Access

---

[8] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.
[9] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services
[10] *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #63].

members' injuries will continue to occur until it is absolutely clear that Defendant's wrongful behavior is remedied.

90.     Plaintiffs' position is further supported by recent case law which states that organizations which have not fully updated their websites to insure accessibility for the visually impaired are not immune to redress. See, *Lucia Markett v. Five Guys Enterprises LLC* No. 17-cv-788 [DE #33] Order Denying Defendant's Motion To Dismiss, where the Honorable Judge Katherine B. Forrest rejected the defendant's argument that Five Guys' in-process renovation of its website which will eventually result in its website being accessible to plaintiff and other blind and visually impaired individuals (after the renovation is complete) rendered plaintiff's claim as moot.

91.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

92.     Unlawful discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations." 42 U.S.C. § 12182(b)(2)(A)(II).

93.     Unlawful discrimination also includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services,

segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(III).

**Barriers to Access**

94.    As a result of the inaccessibility of Defendant's Website to be accessible to visually impaired individuals, those visually impaired individuals are denied full and equal access to Defendant's physical self-storage facility locations and the online services as Defendant has made available to the public through the information provided on Defendant's Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

95.    Defendant's Website is not accessible to users who are visually impaired such that visually impaired are unable to go to the Website and obtain the most perfunctory information such as Defendant's inventory of self-storage units available for rental and packing merchandise for purchase.

96.    Further, the Website does not offer include the universal symbol for the disabled[11] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

97.    There are readily available, well established guidelines on the Internet for

---

[11]  ™, or HTML "Accessibility" link for those individuals who are visually impaired

making websites accessible to the blind and visually impaired. Incorporating the basic components to make its Website contained therein accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

**Violations of the ADA**

98.    The Defendant has violated the ADA (and continues to violate the ADA) by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access Defendant's Website. These violations are ongoing.

99.    As a result of the inadequate development and administration of Defendant's Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

100.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Gomez and Open Access members injunctive relief; including an order to:

a)  Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the www.safeguardit.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b)  Require Defendant to take the necessary steps to make the Website  readily accessible to and usable by visually impaired users, and during that time period prior to the www.safeguardit.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the

information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of viewing and locating Safeguard Self Storage (locations) and becoming informed of Defendant's Safeguard Self Storage units for rental, packing supply merchandise for sale, promotions, and other services within Defendant's Website. During that time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so they are not impeded from obtaining the products and services made available to the public through Defendant's Website and through Defendant's physical locations.

101.    Plaintiff Gomez and Open Access members have been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff Gomez and Open Access members are entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Safeguard Operations LLC.

## COUNT II – TRESPASS

102.    Plaintiffs re-allege and incorporate by reference the allegations set forth herein above.

103.    Plaintiff Gomez and Open Access members' tangible personal property (computer and the personal information and browsing history stored therein) has suffered a trespass by Defendant on each and every date that said Open Access members have

accessed Defendant's www.safeguardit.com website.  Plaintiff Gomez and Open Access members' personal information has suffered a trespass due to the employment of software analytics by Defendant which are present on Defendant's Website, which Plaintiff's members have navigated.

104.    Plaintiff Gomez and Open Access members, being unable to comprehend Defendant's Website to become informed of Defendant's privacy/tracking policies, have been unaware that Defendant's Website was placing software on their computers.

105.    Plaintiff Gomez and Open Access members have not consented to the placement of software on their personal computers; therefore, Defendant has committed a trespass against said Plaintiffs.

106.    By the acts described hereinabove, Defendant has repeatedly and persistently engaged in trespass of Plaintiff Gomez and Open Access members' personal property in violation of the common law.

107.    Defendant's installation, operation, and execution of software on Plaintiff Gomez and Open Access members' computers has impaired the condition and value of those computers.

108.    At Defendant's Website location (https://www.safeguardit.com/privacy-policy) the Defendant states the following:

### The Information We Collect

"In addition, we automatically gather general statistical information about our Web site and visitors, such as IP addresses, browsers, pages viewed, number of visitors, goods and services purchased, etc. … We may provide this statistical information to third parties…"

"… we use cookies to store and sometimes track information about you… we use cookies to remind us who you are and enable us to access your account information so you do not have to re-enter it; gather statistical information about

usage by registered or unregistered users, research visiting patterns, and help target advertisements based on user interests; assist our retail partners track visits and process orders; and track progress and participation in promotions. In some instances, our retail partners and advertisers appearing at our site may use their own cookies…"

### The Way We Use Information

"… Safeguardit.com uses a specific cookie in order to facilitate the use of Google Universal Analytics for users logged-in to the Applications or the Platforms ("Logged-In User). […] Safeguardit.com may use Google Universal Analytics and Google Analytics to track and analyze the pages of the Services you visit…"

109.    As a direct and proximate result of Defendant's trespass to chattels, nuisance, and interference and unauthorized access of and intermeddling with Plaintiff Gomez and Open Access members' property, Defendant has injured and impaired on the condition and value of said individual's computers as follows:

a)      By consuming the resources of an/or degrading the performance of said individual's computers (including space, memory, processing cycles and internet connectivity);

b)      By infringing on said individual's right to exclude others from their respective computers;

c)      By infringing on said individual's rights to determine which programs should be installed and operated on their own computers;

d)      By compromising the integrity, security, and ownership of said individual's computers; and

e)      By forcing said individuals to expend money, time, and resources in order to remove the programs installed on their respective computers without notice or consent.

110.    For all of the foregoing, Plaintiff Gomez and Open Access members have no adequate remedy at law.

### DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff Andres Gomez and Plaintiff Open Access For All, Inc. hereby demand judgment against Defendant Safeguard Operations LLC and requests the following injunctive and declaratory relief permanently enjoin Defendant from any practice, policy and/or procedure which will deny Plaintiff Gomez and Open Access members (and other individuals with visual impairments) equal access to, and benefit from Defendant's services, programs, activities and facilities, as well as:

    a) The Court issue a declaratory judgment that Defendant has violated Plaintiff's rights as guaranteed by the ADA;

    b) The Court enter an Order requiring Defendant to update its www.safeguardit.com website to remove barriers in order that individuals with visual disabilities can access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

    c) The Court enter an Order requiring Defendant to clearly display the universal disabled logo[12]  and sign of website accessibility[13] (standard WCAG 2.0) within its Website.  Such a clear display is to insure that

---



[12]

[13]

individuals who are disabled are aware of the availability of the accessible features of the www.safeguardit.com website;

d) The Court enter an Order compelling Defendant to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendant's policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendant is in compliance with the ADA;

e) The Court enter an order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

f) The Court enter an Order directing Defendant to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures to the Website;

g) The Court to declare that Defendant's actions, as set forth above, violate the Florida common law tort of trespass as alleged above in that the Website has placed unwarranted and unauthorized software on Plaintiff's computer without his consent;

h) The Court to award injunctive and equitable relief as applicable, including:

   i.   prohibiting Defendant from engaging in the acts alleged above;

      ii.      requiring Defendant to provide effective communication to users of its Website such that individuals who are visually impaired have knowledge and notice of Defendant's placement of software on their computer(s); and

      iii.     requiring Defendant to provide Plaintiff reasonable means to decline participation in Defendant's placement of software on his computer;

i)  The Court award damages in an amount to be determined at trial;

j)  The Court to award Plaintiff reasonable litigation expenses and attorneys' fees;

k)  As to the count of trespass, the Court to award Plaintiff other equitable relief as the Court deems proper; compensatory damages sustained by Plaintiff; and permanent injunctive relief prohibiting Defendant from engaging in the conduct and practices of trespass as complained of herein; and

l)  That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 11th day of April, 2018.

Respectfully submitted,

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*